IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNDERGROUND VAULTS &                )
STORAGE, INC.,                      )
                                    )
                 Plaintiff,         )
                                    )
        v.                          )       Case No. 11-1067-JWL
                                    )
CINTAS CORPORATION and              )
CINTAS #2,                          )
                                    )
                 Defendants.        )
                                    )
_____)

**MEMORANDUM AND ORDER**

This diversity action presently comes before the Court on defendants' motion for

summary judgment (Doc. # 53). For the reasons set forth below, the motion is **granted**

**in part and denied in part**. The motion is granted with respect to plaintiff's tortious

interference and unjust enrichment claims, on which claims defendants are awarded

judgment. The motion is otherwise denied. In addition, because the Court believes that

this matter may be resolved on the parties' written submissions, which included a sur-

reply by each party, the Court also **denies** plaintiff's motion for oral argument on the

summary judgment motion (Doc. # 75).

I.      **Background**

The parties have stipulated to the following facts:  In November 2009, The

Boeing Company ("Boeing") issued a request for proposal ("RFP") for the storage, security, retrieval, and transportation of certain Boeing documents. Boeing issued the RFP to plaintiff Underground Vaults & Storage, Inc. ("UVS"), defendants Cintas Corporation and Cintas #2 (collectively "Cintas"), and other companies. In January 2010, Cintas submitted a response to the RFP that described that UVS would provide the storage component for the project (at UVS's facility in Hutchinson, Kansas). In July 2010, Boeing selected Cintas as the winning bidder, and Boeing and Cintas executed a written agreement. In November 2010, Cintas notified UVS that UVS was longer being considered for the provision of the storage component of the Boeing-Cintas contract.

UVS alleges that it entered into a joint venture with Cintas to obtain and perform the Boeing contract and that Cintas improperly denied it the opportunity to provide the storage component for the Boeing contract. UVS seeks a declaration of the existence of the joint venture, and it asserts state-law claims under Kansas law for breach of the joint venture agreement, breach of fiduciary duty, tortious interference, and unjust enrichment. Cintas moves for summary judgment on all claims.

## II.    **Summary Judgment Standard**

The Court applies the following standards in considering a motion for summary judgment. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the

evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   Existence of a Joint Venture

Cintas seeks summary judgment on UVS's claim for a declaration that a joint venture existed between the parties for the purpose of obtaining and performing the Boeing contract.  In *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70 (1979), the Kansas Supreme Court summarized Kansas law on this issue as follows:

> In sum, cases indicate that a joint venture is an association of two or more persons or corporations to carry out a single business enterprise for profit; it may be found in the mutual acts and conduct of the parties. Among the acts or conduct which are indicative of a joint venture, but no single one of which is controlling in the determination, are:  (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

*See id.* at 76.  The supreme court also noted its prior statement that "joint ventures and partnerships are so similar in nature that they are governed by the same rules of law." *See id.* (citing *Neighbors Constr. Co. v. J.R. Seal-Wells Constr. Co.*, 219 Kan. 283, 285 (1976)).

The Tenth Circuit has applied these factors from *Modern Air Conditioning* in at

4

least two published cases in recent years. *See Meyer v. Christie*, 634 F.3d 1152, 1158-59 (10th Cir. 2011); *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1245-46 (10th Cir. 2006). In *Terra Venture*, in which the Tenth Circuit affirmed the district court's summary judgment in favor of the defendant, the court agreed with the district court that the parties had not intended to form a joint venture. *See Terra Venture*, 443 F.3d at 1246. With respect to the five applicable factors, the court noted that plaintiff could not satisfy the first, second, third, or fifth factor; and that with respect to the parties' intentions, although they had agreed to hold themselves out to the public as a joint venture, "they made no other substantive step to form this relationship." *See id.* at 1245-46.

In *Meyer*, on the other hand, the Tenth Circuit, in upholding a jury verdict in favor of the plaintiff, rejected an argument that the evidence of a joint venture in that case was insufficient as a matter of law. *See Meyer*, 634 F.3d at 1158-59. The court first noted that, as stated in *Modern Air Conditioning*, "these five factors are not exclusive or outcome-determinative." *See id.* at 1158 (citing *Modern Air Conditioning*, 226 Kan. at 76). The court then distinguished *Terra Venture* and reasoned as follows:

> Moreover, the evidence regarding these factors is much stronger in the instant case than in *Terra Venture*. In *Terra Venture*, the only evidence suggesting the parties intended to form a joint venture was their agreement that they would refer to their project as a joint venture in press releases. In this case, by contrast, the evidence was that the parties agreed they would in fact form a joint venture, not just that they would refer to their project as such. The evidence also indicated that Plaintiffs and Defendants informed not just the public but also their employees and attorneys that they were jointly working on the project. Furthermore, although it is

5

undisputed the parties did not actually share expenses, profits, and losses, the evidence introduced at trial was that they agreed they would share future profits and losses and would "true-up" expenses when the corporation paperwork had been completed. And finally, there was evidence of at least some joint control over the project based on the parties' consultation with each other as equals on various aspects of the project, particularly in their negotiations with city officials.

*See id.* at 1158-59 (citations omitted).

Cintas argues that an application of the five-factor test compels the conclusion as a matter of law that no joint venture existed here. Cintas argues that the first, second, third, and fifth factors are not met here, and that there is little evidence that the parties intended to form a joint venture. In particular, Cintas notes that the draft written agreement it provided to UVS in December 2009 and the draft agreements exchanged by the parties in July 2010 all contained provisions stating that the parties were independent contractors and that the agreement would not create a partnership.

The Court agrees that UVS has failed to offer evidence at this stage to satisfy the first and fifth factors—the parties did not jointly own and control any particular property, and no salaries were fixed by joint agreement. The second factor is also not met here. There is no evidence that the parties shared expenses relating to the bid. UVS argues that the parties generally shared revenues from the project, but there is no evidence of any intent to share *profits* from the Boeing contract. The only evidence is that the Boeing contract (if obtained) would be with Cintas, and Cintas would then pay UVS a fixed rate for its services. Thus, there is no evidence that UVS would share any profits from the Boeing contract generally or any of the risk of losses.

The Court cannot agree with Cintas, however, that there is no evidence weighing in favor of UVS on the third factor. The evidence, viewed in UVS's favor, shows that the storage component, which UVS would provide, was a significant part of the Boeing project; that UVS drafted portions of the bid that related to its provision of the storage component; that Cintas invited UVS's comments on drafts of the bid; and that UVS participated in the live presentation of the bid to Boeing. Boeing even invited UVS to participate in the negotiation of the final contract. Thus, there is evidence showing that UVS and Cintas did share some amount of control over the bid, and that UVS did actively participate in the submission of the bid and was intended to participate in the fulfillment of the Boeing contract.

UVS has also submitted evidence suggesting an intent by the parties to form a joint venture or partnership. UVS's president, Lee Spence, testified that on December 11, 2009, at a meeting of potential bidders in Wichita, Kansas, Don Byers of Cintas asked about the possibility of Cintas and UVS "working together partnering" on the project. Mr. Byers testified that he asked Mr. Spence "if it would make sense . . . to team together on this particular opportunity." A timeline created by Mr. Byers states that he asked Mr. Spence "if we could partner on the proposal." In a number of documents and e-mails, both within Cintas and between the parties, Mr. Byers and other Cintas personnel referred to the parties as "partners" or referred to their relationship as a "partnership". Cintas argues that such uses of the word "partner" do not necessarily mean that the speaker or writer intended the word in its legal sense. If, however, the

evidence is viewed in UVS's favor, as it must be at summary judgment, the repeated use of "partner" and "partnership" by Cintas to describe the relationship must be given at least some weight as indicative of an intent to form a partnership or joint venture. One Boeing representative also testified that "it appeared to Boeing that it was going to be a partnership" involving Cintas and UVS.

The bid submitted to Boeing in response to the RFP also provides some evidence that Cintas and UVS were engaged in something more than a simple contractor-subcontractor relationship. The parties agree that Boeing required a single party to be designated as the prime contractor for the project and that they intended Cintas to fill that role. The introductory section of the bid, however, after stating that Cintas would "prime" the opportunity, stated that Cintas and UVS were "team[ing] together" to deliver a "comprehensive solution," with each providing certain services. The bid consistently included information for both Cintas and UVS in response to requests for information. For instance, the bid provided an answer for both Cintas and UVS in response to a request for "your" strengths, strategies, and capabilities. Nor did the bid expressly state that UVS was a mere subcontractor. The list of key management personnel included UVS personnel, and in response to a question whether that management team would include leased employees or subcontractors, the bid included answers for both Cintas and UVS, without reference to UVS as a subcontractor. Other than the initial designation of Cintas as the "prime", the bid as a whole appeared to be a joint submission of Cintas and UVS.

One might argue that such a joint bid might as easily have been submitted by the parties with the intention that the parties would nevertheless engage in a normal contractor-subcontractor relationship, which would be defined by a separate agreement between the parties. There is evidence to the contrary, however. In an e-mail dated December 16, 2009, Mr. Byers of Cintas sent his counterpart at UVS, Pam Blaylock, a proposed agreement for the parties, which Mr. Byers called Cintas's "standard Partnership agreement." As noted above, this proposed agreement contained language stating that the agreement did not create a partnership between Cintas and the vendor executing the agreement. In the e-mail, however, Mr. Byers stated: "I'm not even sure if the partnership agreement is the correct one for this type of partnership arrangement . . . ." Thus, there is some evidence that Mr. Byers and Cintas viewed its relationship with UVS as different from Cintas's standard vendor relationship. Cintas stresses the fact that the parties' draft agreements contained independent contractor provisions, but, as UVS points out, the parties did not execute any such agreement. Mr. Spence testified that UVS did not agree to Cintas's proposed agreements in part because UVS was not merely a vendor or independent contractor.

The Court concludes that this evidence is sufficient to create a question of fact for trial concerning the existence of a joint venture between the parties. The evidence discussed makes this case more like *Meyer* than *Terra Venture*. There is evidence here of joint participation in the project before UVS was removed and of numerous instances in which the parties called their relationship a partnership, and the bid to Boeing

provides further evidence of an equal relationship. Thus, unlike *Terra Ventures*, and as in *Meyer*, there is evidence in this case of an intent to form a joint venture going beyond a mere agreement to refer to the relationship as a joint venture or partnership. The Court therefore cannot say as a matter of law that no joint venture existed; a question of fact remains on that issue, and the Court therefore denies Cintas's motion for summary judgment on UVS's declaratory judgment claim.[1]

## IV.    Breach of Contract

### A.    *Existence of a Joint Venture*

In seeking summary judgment on UVS's claim for breach of contract, Cintas first argues that there could be no breach because no joint venture existed. Because a question of fact remains on that latter issue, Cintas is not entitled to summary judgment on the contract claim on this basis.

---

[1]The parties dispute whether UVS must establish the existence of the joint venture by clear and convincing evidence. Cintas cites to statements that the existence of a fiduciary relationship must be established by clear and convincing evidence under Kansas law. *See, e.g.*, *Rajala v. Allied Corp.*, 919 F.2d 610, 615-16 (10th Cir. 1990). In neither *Terra Ventures* nor *Meyer*, however, did the Tenth Circuit apply such a standard in determining whether there was sufficient evidence of the existence of a joint venture. Nor did the Kansas Supreme Court apply such a standard in *Modern Air Conditioning*, even though it did apply the standard in considering punitive damages later in the opinion. *See* 226 Kan. at 79. Thus, the Court is not persuaded that the Kansas Supreme Court would require that the existence of a joint venture be established by clear and convincing evidence. Moreover, even if such a standard did apply here, the Court would conclude that the standard has been met, in light of Cintas's references to the relationship as a partnership, including Mr. Byers's e-mail distinguishing the relationship with UVS from Cintas's other standard vendor relationships.

B. *Statute of Frauds*

Cintas next argues that the Kansas statute of frauds bars enforcement of the alleged joint venture agreement because it could not be performed within one year of its making. *See* K.S.A. § 33-106. In response, plaintiff argues that joint venture and partnership agreements are exempt from compliance with the statute of frauds, based on the following statement by the Tenth Circuit: "Kansas courts have repeatedly held that 'the statute of frauds and kindred statutes have no application' to partnership transactions, even when these transactions involve real property." *See Meyer*, 634 F.3d 1152, 1159 (10th Cir. 2011) (quoting *Goodrich v. Wilson*, 106 Kan. 452 (1920)). The Court rejects this argument, as it is persuaded that this pronouncement of Kansas law in *Meyer* is properly limited to situations involving the sale of real property.

*Meyer* involved the sale of real estate, and the Tenth Circuit began its analysis in *Meyer* by noting the "general rule" that "a joint adventure in the purchase and sale of real estate is not within the statute of frauds." *See id.* (quoting *Shoemake v. Davis*, 146 Kan. 909, 914 (1937)). The court then noted the Kansas Supreme Court's conclusion in two cases that partnership agreements involving the sale of real estate are not subject to the statute of frauds. *See id.* at 1159-60 (citing *Potucek v. Blair*, 176 Kan. 263, 266 (1954), and *Crawford v. Forrester*, 108 Kan. 222, 223-24 (1921)). The Tenth Circuit concluded as followed:

> Kansas courts have repeatedly affirmed this holding and reasoning, *see, e.g.*, *Potucek* []; *Shoemake* [], and we see no reason to depart from it under the circumstances of this case. Although the statute of frauds would

11

> apply to a land purchase agreement as between the seller and the purchaser of the property, it does not effect [*sic*] the relationship between the parties to the joint venture agreement or their obligations under that agreement.

*See id.* at 1160. Thus, in *Meyer* the Tenth Circuit reaffirmed the general rule under Kansas law that the statute of frauds does not apply to a partnership agreement involving the purchase of real estate, and any broader statement of the law must be considered dictum. Moreover, it does not appear that the Kansas Supreme Court has held that all partnership agreements, for any purpose, are exempt from compliance with the statute of frauds; to the contrary, the references by the Kansas Supreme Court to the statute's non-applicability to partnership agreements have been in the context of purchases or leases of real estate interests. *See, e.g.*, *Goben v. Barry*, 234 Kan. 721, 728 (1984) (stating the "well-settled" rule that the statute "is inapplicable to an oral partnership agreement to engage in the business of procuring oil and gas leases despite the fact that the Statute of Frauds applies to the leases themselves"); *Potucek*, 176 Kan. at 266 (cited in *Meyer*); *Shoemake*, 146 Kan. at 914 (general rule quoted in *Meyer*); *Crawford*, 108 Kan. at 223-24 (cited in *Meyer*) ("The contract was not affected by the statute of frauds, because it dealt with the personal relations of joint adventurers, and not with the sale of real estate."); *Goodrich*, 106 Kan. at 455-56 (cited in *Meyer*).

Finally, the Kansas Supreme Court's rationale that the Tenth Circuit recognized in *Meyer*—that a partnership agreement involving the future purchase of real estate is not an agreement for the purchase of real estate but rather is an agreement defining the relationship of the partners—would not apply to contracts that cannot be performed

within one year, as partners may define their relationship as lasting a specific period of time.[2]

Other courts have made this same distinction. In *Yonofsky v. Wernick*, 362 F. Supp. 1005 (S.D.N.Y. 1973), the court noted that general pronouncements in New York law about the inapplicability of the statute of frauds to joint ventures had been based on two rationales: that for joint ventures intending to purchase real estate, the joint venture agreement is not actually for the purchase of that real estate; and that a joint venture may be for a particular purpose, with an agreement terminable at will, which agreement therefore may be performed within a year. *See id.* at 1026-27. Thus, the court concluded that other joint venture agreements *would* fall within the statute of frauds, such as if the joint venture agreement itself was for the sale of real estate from one joint venturer to another, of if the agreement was for a specific duration longer than one year. *See id.* The Second Circuit cited *Yonofsky* in similarly concluding that, despite the general pronouncements in New York law of the non-applicability of the statute to joint venture

---

[2]The history of *Meyer* supports this limitation of the Tenth Circuit's holding. Before the district court, the defendants argued that the joint venture agreement was not enforceable under the statute of frauds because it could not be performed within one year, but the district court concluded that the undisputed facts did *not* establish that the contract could not be performed within a year; thus, the district court addressed the merits of that argument, while including a footnote distinguishing partnership agreements involving the procurement of oil and gas leases, as in *Goben* and *Potucek*. *See Meyer v. Christie*, 2009 WL 331634, at *4 & n.2 (D. Kan. Feb. 10, 2009). On appeal to the Tenth Circuit, the defendant did not raise this issue concerning the statute's one-year provision, and thus the Tenth Circuit had no reason to consider the applicability of that provision.

agreements, there was no reason not to apply the unambiguous language of the statute of frauds, which must therefore apply to and bar enforcement of an oral joint venture agreement with a term longer than one year. *See Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 827-28 (2d Cir. 1984); *see also Pemberton v. Ladue Realty & Constr. Co.*, 244 S.W.2d 62 (Mo. 1951) (statute of frauds applies to partnership agreements that cannot be performed within one year).

This Court similarly concludes that there is no reason to exempt partnership or joint venture agreements from compliance with statute of fraud's requirement of a writing for contracts that cannot be performed within one year, as such an exemption would contravene the unambiguous language of the statute. The Court further concludes that the Kansas Supreme Court would so hold.[3]

Thus, in the present case, pursuant to the statute of frauds, a signed writing is required if the alleged oral joint venture agreement was an agreement not to be performed within one year of its making. *See* K.S.A. § 33-106. Cintas argues that UVS has alleged a joint venture for the purpose of obtaining and performing a seven-year

---

[3]As UVS notes, in *Butler National Service Corp. v. Navegante Group, Inc.*, 2011 WL 4452505 (D. Kan. Sept. 26, 2011), this Court, citing *Meyer* and *Goben*, stated as a general rule that "under Kansas law, the statute of frauds does not apply to the relationship between joint venturers. *See id.* at *3. In *Butler*, however, the plaintiff did not challenge this statement of the general rule by the defendants, instead arguing that no joint venture existed, and thus the Court had no occasion to consider this distinction between agreements involving the future purchase of real estate and agreements that cannot be performed within one year in the context of joint ventures. Consideration of that distinction in this case compels the Court's conclusion that the statute of frauds may apply here.

contract with Boeing. In the testimony cited by Cintas, however, UVS's representatives did not testify that the joint venture agreement itself had a seven-year term; rather, they testified that the agreement was to perform the Boeing contract, which they agreed had a seven-year term. That distinction is critical, as the Boeing contract had termination provisions that allowed for its termination before the expiration of the seven-year term.[4] Under Kansas law, the statute of frauds "covers only those contracts whose performance cannot possibly be completed within a year." *See Nutt v. Knutson*, 245 Kan. 162, 164 (1989) (quoting *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 59 (1982)). Thus, an agreement that is terminable at the will of either party is "clearly susceptible of performance within a year and is outside the statute of frauds." *See id.* In this case, Cintas had the power to terminate its contract with Boeing during 2010; thus, the joint venture agreement with the purpose of performing that Boeing contract might have been performed completely within one year of its making. Indeed, the Kansas Supreme Court addressed this very situation in *Johnston v. Bowersock*, 62 Kan. 148 (1900), which similarly involved an oral agreement lasting as long as a contract continued between the defendant and a third party—which contract had a 99-year term. *See id.* at 156. The Kansas Supreme Court held that because the third-party contract allowed for termination for a contingency that could have arisen within one year, the oral agreement might have been performed within a year—however remote the contingency—and therefore the oral

---

[4]For instance, Cintas could terminate its contract with Boeing with 30-days' notice "for convenience."

agreement was not within the contemplation of the statute of frauds. *See id.* at 156-61.

For the same reason here, the Court concludes that the alleged oral joint venture agreement between UVS and Cintas might have been performed completely within one year of its making, and thus that the agreement is not subject to the requirements of the statute of frauds. Accordingly, the Court rejects this basis for summary judgment on UVS's claim for breach of contract.[5]

C. *Indefiniteness*

Cintas also argues that it is entitled to summary judgment on the claim for breach of contract because the alleged joint venture agreement did not contain all essential terms and thus was too indefinite to be enforced. Cintas describes the alleged agreement as a mere agreement to make a contract in the future, which "is not binding unless all the essential terms and conditions are agreed upon and nothing essential to complete it is left to future negotiations." *See Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 212 Kan. 730, 734 (1973). Cintas relies on the following rule of Kansas law: "Only reasonable certainty is required in a purported contract, but where the purported contract is so vague and indefinite that the intentions of the parties cannot be ascertained, it is unenforceable." *See Mohr v. State Bank of Stanley*, 244 Kan. 555, 573 (1989) (citing *Jack Richards Aircraft Sales, Inc. v. Vaughn*, 203 Kan. 967, 971 (1969)). Cintas notes that the parties eventually exchanged lengthy draft written agreements containing many

_____

[5]In light of this conclusion, the Court need not address UVS's argument that the RFP response satisfied the requirements of the statute of frauds.

terms that were not discussed before Cintas submitted the bid to Boeing, by which time UVS alleges that the joint venture had been formed.

The Court rejects this argument at this summary judgment stage of the litigation. Viewing the evidence in UVS's favor, the parties had agreed that they would be partners in attempting to obtain the Boeing contract and in performing that contract; that UVS would provide the service of storing the Boeing documents; and that Cintas would pay UVS for that service at a fixed rate, as demonstrated by the rate set forth in the bid to Boeing. Thus, the essence of the joint venture had been fixed by agreement, and the intentions of the parties relating to that joint venture could be ascertained. The fact that particular details remained and were discussed later does not render the joint venture agreement fatally indefinite, as only "reasonable certainty" is required. Cintas has not provided any authority suggesting that such an agreement is too indefinite—let alone any authority involving joint venture agreements, which by their nature may be formed in a more informal manner than other contracts. The Court concludes that Cintas is not entitled to summary judgment on this basis.

### V.      Breach of Fiduciary Duty

Cintas moves for summary judgment on UVS's claim for breach of fiduciary duty on the sole ground that because no joint venture existed, it had no fiduciary duty to UVS. The Court has ruled that a question of fact remains with respect to the existence of the joint venture; therefore, UVS's claim for breach of fiduciary duty survives as well, and

17

Cintas's motion is denied with respect to that claim.

## VI. **Tortious Interference**

### A. *Scope of the Claim*

The parties dispute the proper scope of UVS's tortious interference claim. In Count IV of its amended complaint, UVS alleged that Cintas tortiously interfered with the prospective economic relationship between Boeing on one hand and the alleged partnership/joint venture between UVS and Cintas on the other hand. Accordingly, Cintas addressed that specific claim in its original brief in support of its motion for summary judgment. In response, however, UVS argued that its claim was not so limited and that it had preserved in the pretrial order a tortious interference claim based on interference with the relationship between Boeing and UVS. Cintas objects to such an amendment of UVS's claim as pleaded.

The Court concludes that UVS's claim, as presently defined by the pretrial order, is based on a relationship between Boeing and UVS (as opposed to between Boeing and the joint venture). In the section of the pretrial order setting forth the parties' contentions, neither party addressed the details of UVS's tortious interference claim. In the section setting forth the elements of the claims, the pretrial order stated that UVS asserts that it must prove an economic expectation of UVS; and that Cintas asserts that UVS must prove interference with the economic relationship between Boeing and the alleged joint venture. The pretrial order thus merely noted different elements as asserted

by the parties. Cintas did not include within the pretrial order any language preserving an objection to UVS's claim on the basis that it constituted an untimely amendment of the latest complaint. It was incumbent upon Cintas to make the Court aware of any such objection at that time, so that the Magistrate Judge or the undersigned could rule on that objection, and Cintas failed to do so at that time. Accordingly, UVS's statement of its claim in the pretrial order prevails, and UVS has asserted and preserved a tortious interference claim based on a relationship between Boeing and UVS. Similarly, UVS is deemed to have abandoned, by failing to include it in the pretrial order, any tortious interference claim based on a relationship between Boeing and the alleged joint venture between the parties.

### B. *Merits of the Claim*

In its reply brief, Cintas attacks the merits of UVS's surviving claim, as that claim was explained by UVS in its response brief. The parties then addressed those merits in sur-reply briefs. Accordingly, Cintas's motion for summary judgment on UVS's tortious interference claim is ripe for ruling.

The Kansas Supreme Court has recognized the following elements for a claim of tortious interference with a prospective business advantage:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct.

*See Noller v. GMC Truck and Coach Div., Gen. Motors Corp.*, 244 Kan. 612, 619-20 (1989) (internal quotation omitted). The supreme court has also applied the statement of this tort from Section 766B of the Restatement, *see id.*, which provides as follows:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*See* Restatement (Second) of Torts § 766B (quoted in *Noller*).

In its response brief, UVS argued that Cintas tortiously interfered with UVS's prospective contractual relation with Boeing in two respects: first, by eliminating UVS as a potential bidder for the Boeing contract "by inducing UVS to partner with it;" second, by making false and misleading statements to Boeing about cost issues with UVS, which caused Boeing to approve transferring the storage component away from UVS. The Court addresses those two distinct claims in turn.

First, with respect to UVS's failure to submit its own bid, UVS has failed to argue or offer evidence that Cintas, prior to the submission of its bid, induced or otherwise caused Boeing, the third party, not to accept or consider a bid from UVS. Rather, UVS argues that Cintas interfered by inducing UVS to enter into the joint venture. Thus, UVS's claim is governed by prong (b) of Restatement Section 766B, which in this case

would require interference consisting of Cintas's "preventing" UVS from submitting the bid.

Cintas argues that any conduct by which it persuaded UVS not to submit its own bid falls short of "prevention" of UVS as required by the Restatement. Cintas relies on the opinion in *Braun v. Promise Regional Medical Center-Hutchinson, Inc.*, 2011 WL 6304119 (D. Kan. Dec. 16, 2011). In *Braun*, Judge Rogers of this court held that this "prevention" standard in Section 766B requires a hindrance to the third-party contract and thus requires more than mere persuasion. *See id.* at *8. Accordingly, Judge Rogers dismissed a tortious interference claim based on the allegation that the defendant had insisted that the plaintiff refuse an offer of employment from a third party because defendant was in the process of working out an arrangement with the plaintiff. *See id.* at *2, 8. In response to this argument by Cintas, UVS has not addressed *Braun*, either to distinguish the case or to argue that it was wrongly decided.

The Court agrees with the reasoning of Judge Rogers in *Braun*. Section 766B allows for a tortious interference claim based on merely "inducing" the third party, which could arguably include acts of persuasion, but it requires "prevention" of the plaintiff, which distinction suggests a more rigorous standard for conduct directed to the plaintiff. The Court also agrees with Judge Rogers that the ordinary meaning of "prevention" requires something more in the nature of an actual hindrance beyond mere persuasion. It is also telling that a comment to a companion section to Section 766B contains the following explanation:

21

> One may be prevented from performing his contract in numerous ways. Thus he may be physically restrained or intimidated or be excluded from the place where the contract must be performed or be deprived of the necessary equipment or labor.

*See* Restatement (Second) of Torts § 766A.

UVS has not provided evidence of any conduct by Cintas with respect to UVS's submission of its own bid other than evidence of Cintas's discussion of and agreement to a joint venture relating to the submission of a bid to Boeing from both parties. UVS has not cited any authority suggesting that such conduct may constitute "prevention" under Section 766B or otherwise constitute actionable interference under Kansas law. The Court concludes that such conduct is not sufficient as a matter law. Accordingly, summary judgment is appropriate on UVS's first claim of tortious interference relating to its submission of a bid to Boeing.

The Court also concludes that Cintas is entitled to summary judgment on UVS's second claim relating to conduct by Cintas after Boeing awarded the bid and entered into a contract with Cintas. The Court agrees with Cintas that UVS had no prospective contractual or business relationship with Boeing at that time. The undisputed evidence reveals that UVS knew that the bid was submitted by Cintas as the prime contractor and that the resulting contract would be between Boeing and Cintas. UVS was not a party to that contract, and any expected benefit would therefore have come in the form of payments from Cintas. UVS may feel—and indeed has alleged—that Cintas was not free to take the storage work elsewhere; that does not mean, however, that Cintas

wrongfully interfered with a business relationship between Boeing and UVS. UVS has

not cited any authority suggesting that it may nevertheless maintain a tortious

interference claim under these facts.[6]  Accordingly, Cintas's motion for summary

judgment on UVS's tortious interference claim is granted with respect to the entire claim

as asserted by UVS.


### VII.  Unjust Enrichment

Cintas seeks summary judgment on UVS's claim for unjust enrichment under

Kanas law.  The Kansas Supreme Court has identified the following elements for such

a claim:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

See J.W. Thompson Co. v. Welles Prods. Corp., 243 Kan. 503, 512 (1988) (citing 12

Williston on Contracts § 1479 (3d ed. 1970)); see also PIK-Civil 4th § 124.17 ("Where

a party furnishes goods or performs services for another and has a reasonable expectation

---

[6]For example, UVS has not argued (or provided pertinent evidence) that it was a third-party beneficiary of the Boeing-Cintas contract and that such a relationship is sufficient to maintain a tortious interference claim.  Indeed, UVS has not asserted a claim for tortious interference with an existing contract, but instead has asserted only a claim for interference with a business *expectation*.  In the context of the storage of these Boeing documents, there is no evidence that UVS had any expectation of business or a contract with Boeing.

of being compensated, the one benefitted is responsible for paying the reasonable worth of the goods provided or services rendered."). UVS claims that its assistance to Cintas on the bid to Boeing, which ultimately resulted in a contract with Boeing, constitutes a benefit conferred to Cintas for which payment should be made to UVS.

The Court may quickly dispose of three of Cintas's arguments for summary judgment on this claim. First, Cintas argues that UVS has not properly pleaded this claim; the time for that argument has passed, however, as the pretrial order now governs UVS's claims. Second, Cintas argues that UVS should be barred from any recovery on this equitable claim under the doctrine of unclean hands, based on UVS's conduct in doing work on its own bid to Boeing and in changing its prices for the work; it is clear, however, that a question of fact remains on any such affirmative defense, on which Cintas bears the burden of proof. Third, Cintas argues that UVS offered only minimal assistance at most on the bid to Boeing; the Court concludes, however, that a question of fact remains concerning whether UVS in fact provided any benefit to Cintas in the form of assistance on the bid.

Cintas's most compelling argument for summary judgment on this claim is that UVS has failed to provide any evidence of the value of the benefit that it conferred and that Cintas received. Cintas points out that UVS has not offered any expert opinion or other evidence from which that value could be determined. Cintas argues that UVS's apparent attempt to recover all of Cintas's profits from the Boeing contract is improper because those profits do not represent the value of the benefit allegedly conferred, that

24

is, UVS's assistance (as opposed to the contract itself, which was conferred by Boeing, not by UVS).

In response to this argument, UVS argues that it is entitled to seek UVS's profits as a measure of the value of the benefit it conferred on Cintas. UVS has not cited to any evidence, however, concerning the value of that benefit, whether measured by Cintas's profits or in some other way. Thus, UVS has not met its burden on summary judgment to provide evidence in support of its claim. In response to Cintas's argument that there was no evidence of the value of the benefit allegedly conferred, UVS was obligated to provide such evidence. UVS's extra-evidentiary reference to Cintas's profits is not sufficient, as UVS has not shown through evidence that those profits are known or may be calculated with sufficient certainty to allow for determination by some means other than mere speculation. Certainly, the Court would not allow this claim to go to the jury without some evidence concerning those profits that UVS seeks to disgorge; in the same way, the Court cannot allow the claim to survive summary judgment in the absence of such evidence. Because UVS has not submitted evidence to support the claim for damages for unjust enrichment, summary judgment is granted on the claim.[7]

_____

[7]Even if UVS had provided evidence establishing Cintas's profits with sufficient certainty, the Court is not convinced that such evidence would preclude summary judgment on this claim, as such evidence might relate to the value of Cintas's contract with Boeing, but it would not necessarily provide any evidence of the value of the specific benefit conferred by UVS—UVS's assistance with the bid. UVS has not provided any authority supporting such a disgorgement of profits from Cintas under these facts. Indeed, the citation from PIK above points to the proper measure of
(continued...)

## VIII. <u>Punitive Damages</u>

Cintas seeks summary judgment on UVS's claim for punitive damages.[8]  Cintas

argues that UVS's damages arise out of the alleged breach of the joint venture agreement

and that UVS has not asserted an independent tort resulting in additional injury, as

required for recovery of punitive damages under Kansas law.  *See Osgood v. State Farm*

*Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir. 1988) (applying Kansas law).

Cintas has been awarded judgment on UVS's tortious interference claim, but

UVS's claim for breach of fiduciary duty remains.  In *Modern Air Conditioning*, the

Kansas Supreme Court noted the rule that an award of punitive damages must be

supported by an independent tort.  *See* 226 Kan. at 79.  After concluding that there was

no such independent tort in that case, however, the supreme court stated as follows: "We

have not overlooked [the plaintiff's] contention that [the defendant] breached its

fiduciary duty . . ., and that breach of a fiduciary duty may in some circumstances give

rise to a claim for punitive damages."  *See id.* (citation omitted).  The court then rejected

the punitive damage claim on its merits.  *See id.*  Thus, in *Modern Air Conditioning*, the

Kansas Supreme Court indicated that a claim for breach of fiduciary duty can support

a claim for punitive damages (requiring the court's consideration of the merits of that

---

[7](...continued)
damages—the reasonable worth of the services provided—concerning which UVS has
provided no evidence.

[8]Cintas also sought summary judgment on any claim by UVS for attorney fees,
but as UVS concedes and the pretrial order confirms, UVS does not assert such a claim.

claim), notwithstanding the general rule requiring an independent tort.

The Court thus concludes that the Kansas Supreme Court would likely rule that UVS may base its claim for punitive damages on its claim for breach of fiduciary duty. Cintas has not provided any authority suggesting that such a claim is insufficient under the general rule in this context. Accordingly, the Court denies Cintas's motion for summary judgment on UVS's claim for punitive damages.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 53) is **granted in part and denied in part**. The motion is granted with respect to plaintiff's tortious interference and unjust enrichment claims, on which claims defendants are awarded judgment. The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for oral argument on defendants' motion for summary judgment (Doc. # 75) is **denied**.

IT IS SO ORDERED.

Dated this 22nd day of July, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge