**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNDERGROUND VAULTS & STORAGE, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 11-1067-MLB |
| | ) | |
| CINTAS CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on Cintas' motion to exclude the testimony of Richard West, plaintiff's expert on lost profits. (Doc. 90). The motion has been fully briefed and the court held a hearing on November 18, 2013. (Docs. 94, 100, 113). Cintas' motion is granted in part and denied in part for the reasons herein.

**Introduction**

This case revolves around a contract for document storage services. Plaintiff alleges that it entered into a joint venture with Cintas to submit a bid proposal to Boeing in the hopes of winning the contract. The bid proposal contemplated that the storage location of Boeing's documents would be at plaintiff's underground storage facilities in Hutchinson, Kansas. After the submission of the bid, Cintas was awarded the Boeing contract. Plaintiff and Cintas then entered into negotiations and circulated a draft lease agreement. The lease agreement, however, was never executed. Ultimately, Cintas provided the storage for the documents at its own facilities. Plaintiff brought this action for breach of the joint venture and breach of fiduciary duty.

To support its claim for damages, plaintiff hired Richard West, a Certified Public Account. West was asked to perform the lost profit calculations and to assume that plaintiff and Cintas had entered into a partnership. To assist in determining the amount of lost profits, West was provided with Cintas' bid and the unexecuted lease agreement between plaintiff and Cintas. At a later date, West was given the Boeing contract which provided an initial term of seven years and an option for three additional one year terms.[1] West submitted a report in which he opined plaintiff's lost profits for a total of 18 years.

Cintas moves to exclude West's opinions on the basis that they are speculative and based on unfounded assumptions.

### **Analysis**

"Rule 702 sets forth the standard for admission of expert testimony," U.S. v. Fredette, 315 F.3d 1235, 1239 (10th Cir. 2003), and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Exclusion of expert testimony is the exception, not the rule. See Advisory Committee Notes concerning the amendment to Rule 702 (noting

---

[1] The unexecuted lease contained these same terms.

-2-

that "a review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule.")

If the expert is sufficiently qualified, as in this case, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." United States v. Avitiz-Guillen, 680 F.3d 1253, 1256 (10th Cir. 2012).

Cintas objects to West's opinions on the basis that Boeing could terminate the contract at any time and, therefore, lost profits for the initial seven years is speculative. The court disagrees. Under Kansas law, "loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties." CoreFirst Bank & Trust v. JHawker Capital, LLC, 282 P.3d 618, 631 (Kan. Ct. App. 2012).

The contract between Boeing and Cintas is currently being performed with no suggestion that Boeing or Cintas has given notice of a termination or are likely to do so during the remainder of the seven-year term. Therefore, a reasonable inference could be drawn by the trier of fact that plaintiff would have provided the storage as set forth in the proposed bid had Cintas not terminated its relationship with plaintiff. Moreover, given the terms of the contract and the proposed lease agreement, the profits from the initial seven year terms were within the contemplation of the parties. Therefore, any argument regarding the potential termination of the contract goes to the weight of the evidence and not its admissibility.

Next, Cintas argues that the lost profits for years 8, 9, and 10 are speculative because several assumptions must be made in order

for those profits to occur.  Essentially, both Boeing and Cintas would have had to agree to the option.  Additionally, plaintiff would also have to execute the option on the lease agreement.  West testified that the option years were highly likely to occur because of the enormous cost in moving the documents.  The initial move and preparation of the 2.5 million drawings spanned over two years at a substantial cost to Boeing.  West testified that it would be highly likely that all parties involved would continue their relationship through ten years due to the significant cost and planning involved in obtaining a different contractor to store the documents.

Moreover, the contract executed by Boeing and Cintas contemplates the contractual relationship continuing for a total of 10 years.  The unexecuted lease agreement also tracks the term of the Boeing contract.  Additionally, plaintiff has identified several exhibits which demonstrate that all parties assumed that the contract would extend through the full 10 year term.  Therefore, the court finds that the lost profits for years 8 through 10 were within the contemplation of the parties at the time the agreements were circulated.  See CoreFirst Bank & Trust, 282 P.3d at 631.

West further opined that the contract would be extended an additional 8 years, a time period that is not contemplated in the contract or the lease agreement.  West calculated this time period by determining plaintiff's history of client retention. West opined that plaintiff's relationships with its customers averaged 18 years and, therefore, it is reasonable to conclude that plaintiff would continue its relationship with Cintas for 18 years.  West, however, admitted that he has never used this type of methodology and that it is not

used by others in his field.

This opinion is not scientific but pure unsupported speculation, at best. "To be reliable under Daubert, an expert's scientific testimony must be based on scientific knowledge . . . and not mere subjective belief or unsupported speculation." Goebel v. Denver and Rio Grande W. R. Co., 346 F.3d 987, 991 (10th Cir. 2003). Therefore, West's opinions as to plaintiff's lost profits in years 11 through 18 are excluded.

## Conclusion

Cintas' motion is granted in part and denied in part. (Doc. 90).

IT IS SO ORDERED.

Dated this ___22nd___ day of November 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE