**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNDERGROUND VAULTS & STORAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 11-1067-MLB |
| | ) | |
| CINTAS CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. UVS's motion in limine (Doc. 121);

2. Cintas' response (Doc. 124); and

3. UVS's reply (Doc. 132).

The pretrial order, signed by Judge John Lungstrum, was filed on February 4, 2013 (Doc. 52). Thereafter, by his memorandum and order dated July 22, 2013 (Doc. 77), Judge Lungstrum concluded that a question of fact remains for trial concerning the existence of a joint venture between the parties. He went on to deny Cintas' motion for summary judgment on UVS's claim for breach of contract because the jury will have to determine, in the first place, whether a joint venture existed. For essentially the same reasons, Judge Lungstrum denied Cintas' motion for summary judgment on UVS's claim for breach of fiduciary duty. Obviously, if the jury determines there was no joint venture, UVS's claim for damages is no longer an issue. The case then was transferred to the undersigned.

UVS hired Richard West as its expert on lost profits.[1] This court held a so-called <u>Daubert</u> hearing on November 18, 2013 and thereafter issued a memorandum and order (Doc. 118). Cintas challenged some of West's opinions on the basis that they are speculative. The court both disagreed and agreed, as follows:

> Cintas objects to West's opinions on the basis that Boeing could terminate the contract at any time and, therefore, lost profits for the initial seven years is speculative. The court disagrees. Under Kansas law, "loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties." <u>CoreFirst Bank & Trust v. JHawker Capital, LLC</u>, 282 P.3d 618, 631 (Kan. Ct. App. 2012).
>
> The contract between Boeing and Cintas is currently being performed with no suggestion that Boeing or Cintas has given notice of a termination or are likely to do so during the remainder of the seven-year term. Therefore, a reasonable inference could be drawn by the trier of fact that plaintiff would have provided the storage as set forth in the proposed bid had Cintas not terminated its relationship with plaintiff. Moreover, given the terms of the contract and the proposed lease agreement, the profits from the initial seven year terms were within the contemplation of the parties. Therefore, any argument regarding the potential termination of the contract goes to the weight of the evidence and not its admissibility.
>
> Next, Cintas argues that the lost profits for years 8, 9, and 10 are speculative because several assumptions must be made in order for those profits to occur. Essentially, both Boeing and Cintas would have had to agree to the option. Additionally, plaintiff would also have to execute the option on the lease agreement. West testified that the option years were highly likely to occur because of the enormous cost in moving the documents. The initial move

---

[1] West initially came up with a lost profit figure of $3,930,000, but he may have reduced that figure by $70,000. Barberich, Cintas' expert, does not appear to propose a dollar amount of damages – he just attacks West's opinions. If UVS prevails, the absence of a figure may present a problem for the jury (and Cintas, as well) but Barberich's failure to present an alternative dollar figure does not make his testimony inadmissible.

-2-

and preparation of the 2.5 million drawings spanned over
two years at a substantial cost to Boeing. West testified
that it would be highly likely that all parties involved
would continue their relationship through ten years due to
the significant cost and planning involved in obtaining a
different contractor to store the documents.

Moreover, the contract executed by Boeing and Cintas
contemplates the contractual relationship continuing for a
total of 10 years. The unexecuted lease agreement also
tracks the term of the Boeing contract. Additionally,
plaintiff has identified several exhibits which demonstrate
that all parties assumed that the contract would extend
through the full 10 year term. Therefore, the court finds
that the lost profits for years 8 through 10 were within
the contemplation of the parties at the time the agreements
were circulated. See CoreFirst Bank & Trust, 282 P.3d at
631.

West further opined that the contract would be
extended an additional 8 years, a time period that is not
contemplated in the contract or the lease agreement. West
calculated this time period by determining plaintiff's
history of client retention. West opined that plaintiff's
relationships with its customers averaged 18 years and,
therefore, it is reasonable to conclude that plaintiff
would continue its relationship with Cintas for 18 years.
West, however, admitted that he has never used this type of
methodology and that it is not used by others in his field.

This opinion is not scientific but pure unsupported
speculation, at best. "To be reliable under Daubert, an
expert's scientific testimony must be based on scientific
knowledge . . . and not mere subjective belief or
unsupported speculation." Goebel v. Denver and Rio Grande
W. R. Co., 346 F.3d 987, 991 (10th Cir. 2003). Therefore,
West's opinions as to plaintiff's lost profits in years 11
through 18 are excluded.

(Doc. 118 at 3-5).

Cintas also hired an expert, G. Matt Barberich. Barberich is a CPA and UVS does not attack his credentials or his qualifications. Barberich prepared a lengthy report (Doc. 124-1). UVS did not depose Barberich nor has it filed a Daubert motion. Instead, UVS has filed a motion in limine which attacks Barberich's written report on a number of grounds which UVS summarizes as follows:

-3-

> As an accountant and damages expert witness, Barberich's testimony is only admissible if it will assist the jury in understanding how lost profits should be calculated, should they find any liability on the part of Cintas. He may not take over the role of Cintas's lawyers in challenging liability by arguing that there was no joint venture between Cintas and UVS. Nor should he be able to comment on the reliability or weight of the evidence, or incorrectly instruct the jury concerning what assumptions a damages expert can and cannot make. For these reasons, UVS respectfully requests that the Court grant its Motion in Limine.

(Doc. 122 at 9).

UVS objects to a number of Barberich's opinions which appear at various places in the first 17 pages of his report. Barberich's methodology isolates portions of West's report and then offers his response (criticism, basically) of the isolated portions. The court has had some difficulty with the format of Barberich's report which has made it hard to make definitive rulings regarding what opinions Barberich can, or cannot, testify about at trial. For example, UVS states "Barberich repeatedly opines that Mr. West's damage calculations are too speculative because the Boeing/Cintas contract allowed Boeing to terminate the contract at any time at Boeing's convenience. Mr. Barberich has no specialized knowledge or training in what might make damages too speculative to be awarded. Indeed, there is no such thing as an expert on whether damages are too speculative – that is an issue for the jury . . . ." However, as just pointed out, Cintas made essentially the same objection to West's opinion and the court overruled Cintas' objection. Perhaps there's a subtle difference the court doesn't appreciate but it seems like UVS is asking the court to prevent Barberich from offering an opinion based on the same facts relied on by West.

Basically, the only definitive rulings the court can make at this time are that whether it be West or Barberich, neither expert can offer an opinion about whether a joint venture existed or whether there was, or was not, a breach of fiduciary duty. Those determinations are reserved for the jury. If either witness attempts to do so, the court will admonish him and will instruct the jury to disregard the witness's testimony. This may have a negative effect on the witness's credibility before the jury so it is up to counsel to make sure that he does not lead the witness into a forbidden area, whether directly or indirectly.

UVS also wants the court to prohibit Barberich from commenting on West's credibility and the reliability of his opinion. UVS notes places in Barberich's report where he describes West's opinions as "unreliable" and "highly speculative" and "lacking reasonable certainty." UVS seems to be objecting more to Barberich's descriptive words rather than the opinions themselves.

Barberich's report will not go to the jury so it's only his testimony that counts. Every lawyer knows that it is improper for one witness to comment on another witness's credibility. The descriptive words to which UVS objects must not be used by Barberich at trial. But that does not mean that the he cannot properly criticize West's methodology and figures. By way of example (which may or may not apply in this case) the court has heard accountants testify about General Accounting Principles or GAP. It would be entirely appropriate for an accounting witness to comment on another accountant's failure to follow GAP, assuming GAP is applicable. Then it would be up to the jury to decide how much weight to give the

-5-

testimony.

In summary, the parties are represented by experienced trial counsel. It is counsels' job to present admissible testimony and to warn witnesses not to get into areas, or use terminology, which will draw legitimate objections. The court doesn't like it when this happens and neither do jurors.

The court suggests that counsel make their witnesses aware of judge Lungstrum's and this court's rulings.

UVS's motion in limine is denied, without prejudice to renewal at trial, if necessary.

IT IS SO ORDERED.

Dated this ___16th___ day of April 2014, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE